2010 Ark. 403

**Pat MATSUKIS, Karen Linblad, Rae Hahn, Lany Ballance, and Charlie Wurmnest, Appellants**

**v.**

**Dani JOY, Mayor; Robert "Butch" Berry; Beverly Blankenship; James DeVito; Joyce Zeller; and Mary Jean Sell, Appellees.**

**No. 10–356.**

Supreme Court of Arkansas.

Oct. 28, 2010.

---

**8.** Rule 4–3(h) is now Rule 4–3(i) of the Rules of the Supreme Court.

Parker Law Firm, Eureka Springs, by: Tim S. Parker, for appellants.

John L. Wilkerson, North Little Rock and M. Keith Wren, Little Rock, for appellees.

ELANA CUNNINGHAM WILLS, Justice.

This appeal arises from the decision of the Carroll County Circuit Court, on its own motion, to dismiss the complaint filed by appellant Pat Matsukis and others challenging the validity and propriety of the installation of parking meters in downtown Eureka Springs.

In June of 2009, the circuit boards of the electronic parking pay station near the Basin Spring Bath House malfunctioned. Several weeks later, the circuit board in a second pay station next to the courthouse malfunctioned as well. Because the circuit boards were obsolete, it was not possible to repair them. Eureka Springs Police Chief Earl Hyatt recommended to the Eureka Springs City Council that the pay stations be replaced with individual parking meters, reasoning that if one meter malfunctioned, the city would only lose the revenue from one parking space, rather than the revenue from an entire lot. Chief Hyatt also received a quote from POM, Inc., a parking-meter supplier, for the cost of installing new parking meters.

On July 1, 2009, the City Council met and passed Ordinance No. 2106, which was captioned "An Ordinance Waiving the Requirements for Competitive Bidding on Acquiring Coin–Operated Parking Meters for the City of Eureka Springs, Arkansas." Noting that the City had authorized and approved a capital expenditure in its 2009 Capital Budget for the purchase of coin-operated parking meters, the City Council found that compliance with notice and bidding requirements for the meters was not feasible or practical because of the amount of lost city revenue. The ordinance then provided as follows:

Section 1. The requirements for competitive bidding in the acquisition of coin-operated parking meters and support posts shall hereby be waived.

Section 2. The quote from POM [for] $289.63 for single head unit and $619.14 for the double-head per unit, plus tax, handling and additional charges for support posts is and shall hereby be accepted.

Section 3. That the City Council for the City of Eureka Springs, AR, authorizes the Chief of Police to spend up to $30,000 from the City's Capital Reserve Funds.

Section 4. All Ordinances and Resolutions, and parts thereof, in conflict with this Ordinance are hereby repealed to the extent of such conflict. In the event any one or more of the provisions contained in this Ordinance shall for any reason be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the remaining provisions of this Ordinance, and this Ordinance shall be construed as if such invalid, illegal or unenforceable provision or provisions had never been contained herein.

Section 5. EMERGENCY CLAUSE. The City Council of the City of Eureka Springs, AR finds that because it is in the best interests and financial health of the citizens of Eureka Springs [to] purchase these coin-operated meters to avoid a |₃continued loss of parking revenue for the City, that an emergency exists and therefore this ordinance shall go into full force and effect immediately upon its passage.

After the passage of Ordinance No. 2106, nineteen referendum petitions were submitted to the City Clerk–Treasurer, Mary Jean Sell. The petitions called for a special election to refer the ordinance to the people. On August 26, 2009, Sell certified that the petitions contained the requisite number of signatures and sent a letter to Pat Matsukis stating that she would present the letter of certification and proposed ordinance calling for the special election to the City Council at its September 14, 2009 meeting. At that meeting, however, the City Council determined that Ordinance No. 2106 was an administrative action and thus voted not to call for a special election.

On November 12, 2009, Pat Matsukis, Karen Linblad, Rae Hahn, Lany Balance, and Charlie Wurmnest ("Appellants") filed a petition and complaint in Carroll County Circuit Court. The complaint, which sought declaratory and injunctive relief, as well as a writ of mandamus, alleged that Ordinance No. 2106 was passed in violation of Arkansas Code Annotated section 14–57–502 (Repl.1998).[1] In addition, the complaint asserted that, because more than the required number of registered voters had signed the referendum petitions, a special election should have been called. Thus, the complaint asked the circuit court to issue a declaratory judgment that the plaintiffs were entitled to have the matter submitted to the |₄voters of Eureka Springs. In addition, the complaint alleged that the parking meters were installed within the historical district without having complied with the proper Historic District Commission guidelines, permits, and approvals.

---

1. Section 14–57–502 provides that "[a]ny municipal ordinance authorizing the installation of parking meters shall not be subject to an emergency clause. Nothing in this subchapter shall limit the rights of the people under the Initiated and Referendum Amendment to the Constitution of the State of Arkansas."

Eureka Springs Mayor Dani Joy and the City of Eureka Springs filed their answer on December 7, 2009; the remaining defendants, who are members of the Eureka Springs City Council, as well as Eureka Springs City Clerk Mary Jean Sell, filed their answer on December 30, 2009. (The defendants are hereinafter referred to collectively as "Appellees.") Appellees' answers were identical and generally denied any wrongdoing. In addition, while Appellees admitted that the referendum petitions contained the requisite number of signatures, they denied that the circuit court should issue an order calling for an election on the matter. Finally, Appellees generally asserted—although without elaboration—the affirmative defenses of failing to state a claim upon which relief could be granted; statutes of limitation; immunity; lack of standing, mootness, and collateral estoppel; failure to exhaust administrative remedies; estoppel and laches; and "all other affirmative defenses contained in Rule 8 of the Arkansas Rules of Civil Procedure."

The circuit court scheduled a hearing on January 22, 2010. At that time, the court gave the parties five days to file amendments to their pleadings and to submit briefs to the court on any of the issues that were presented. The court then set the case for a second hearing in ten days. On January 27, 2010, Appellants filed an amended complaint, raising four specific causes of action. First, the complaint sought relief based on the City Council's failure to set the parking-meter issue for an election despite the referendum petition's having contained the requisite number of signatures. Second, the complaint sought injunctive relief and a declaratory judgment based upon the City's alleged failure to comply with the Eureka Springs Historic District Commission's planning guidelines. Third, the complaint alleged that Ordinance No. 2106 violated Arkansas law because it contained an emergency clause. Finally, the fourth cause of action stated that Ordinance No. 2106 was not necessary for the public peace, health, and safety and, therefore, both the ordinance and its emergency clause were invalid.

In addition to their amended complaint, Appellants also filed a trial brief on February 5, 2010. Appellees did not file an answer to the amended complaint, but filed a trial brief on February 5, 2010. Attached to Appellees' brief were numerous exhibits, including the affidavit of Police Chief Earl Hyatt; portions of Eureka Springs' Municipal Code; the minutes of the City Council meeting at which the council voted to pass Ordinance No. 2106; minutes of the City Council meeting at which it was determined that Ordinance No. 2106 was an administrative action and thus not subject to referendum; various previous ordinances pertaining to parking meters; and a copy of the City's Historic District Guidelines for Design Review.

The circuit court held a hearing on the matter on February 12, 2010, pursuant to a scheduling order entered on January 28, 2010. At the outset of the hearing, the court stated that it had reviewed the briefs that had been submitted and asked whether counsel wished to make additional arguments or to stand on the motions and briefs. Counsel for Appellants stated that he did not think there were "any new motions out there." The court then noted that Appellants had asked for a declaratory judgment and asked whether counsel wished to make further arguments. Counsel replied that Appellees' counsel had provided copies of some older ordinances regarding the installation of parking meters, but suggested that he was not sure that that issue was "[ripe] for decision at this point in time."

After hearing arguments of counsel, the court announced that "there are numerous issues within the case that are strictly matters of law" and that it had not "found anything I think should go to trial." Thus, the trial court concluded that the Appellants' petition for injunctive relief and for relief on the referendum were without merit, and the court dismissed the complaint. When asked on whose motion the dismissal was being entered, the court stated, "I'm doing it on my own" because it found "this case to be without merit."

On February 23, 2010, the circuit court entered an order of dismissal. The court first stated that, "under Arkansas Rule of Civil Procedure 41, the court cannot dismiss 'sua sponte' unless it first gives notice to the parties that the motion will be dismissed, but that does not preclude a dismissal pursuant to Rule 12(b)(6) for a factually deficient complaint." The court stated that it was "treat[ing]" the Appellees' collective answer as "a motion under Rule 12(b)(6)" and further noted that it was "on [Appellants'] amended complaint that the court enters its findings of fact and conclusions of law." After making various findings of fact and conclusions of law, the court found that the complaint was without merit and was dismissed pursuant to Rule 12(b)(6) for failing to state facts upon which relief could be granted.

Appellants filed a notice of appeal on February 19, 2010, and an amended notice of appeal on March 10, 2010, after the court entered its order on February 23. On appeal, they challenge both the procedural propriety of the circuit court's dismissal and the underlying merits of that decision.

█ In their first point on appeal, Appellants urge that the circuit court lacked authority to enter a sua sponte order of dismissal pursuant to Ark. R. Civ. P. 12(b)(6) where Appellees never filed a motion seeking such a dismissal. Appellants urge that the trial court's action resulted in an "ambush" of the plaintiffs with an untimely and improper dismissal of their entire case, all with absolutely no advance notice whatsoever of any intent to do so. Appellees, citing *Hackelton v. Malloy*, 364 Ark. 469, 221 S.W.3d 353 (2006), state that both their original answers and their trial brief operated as motions to dismiss and that the trial court gave both sides the opportunity to brief all issues and be heard at the hearing. Appellees further contend that, to the extent the court's order constituted a grant of summary judgment, it was proper, as both parties had an opportunity to present their arguments and evidence.

█ As discussed above, Appellees filed an answer to Appellants' initial complaint; in that answer, they generally asserted that the complaint failed to state facts upon which relief could be granted. Appellees never filed a motion to dismiss, however, nor did they ever file an answer to the amended complaint.[2] As the trial court acknowledged in its February 23 order, its decision to dismiss the complaint was made sua sponte.

█ Despite the fact that the court asserted that it was dismissing the complaint pursuant to Rule 12(b)(6), the order

**2.** Because the amended complaint did not adopt and incorporate the original complaint, we note that the original complaint was superseded by the amended complaint. *See Farmers Union Mut. Ins. Co. v. Robertson*, 2010 Ark. 241, 370 S.W.3d 179; *Edward J. DeBartolo Corp. v. Cartwright*, 323 Ark. 573, 916 S.W.2d 114 (1996). At the February 12, 2010 hearing, the court asked counsel for Appellees whether they had filed a responsive pleading to the amended complaint. Counsel replied that he had one drafted, but was "waiting," apparently to see what the court was going to do at the hearing.

specifically stated that the decision was "based upon the pleadings, *exhibits,* and arguments of counsel." Indeed, the order directly references evidence contained in the exhibits attached to Appellees' trial brief. For example, the court referred to the various Eureka Springs ordinances authorizing the Mayor to purchase and install parking meters, as well as Police Chief Hyatt's affidavit. It is well settled that when a circuit court considers matters outside the pleadings, the appellate court will treat a motion to dismiss as one for summary judgment. *See* Ark. R. Civ. P. 12(b); *Morgan v. Turner,* 2010 Ark. 245, 368 S.W.3d 888; *Koch v. Adams,* 2010 Ark. 131, 361 S.W.3d 817; *Fegans v. Norris,* 351 Ark. 200, 89 S.W.3d 919 (2002).

Thus, the circuit court here sua sponte granted summary judgment in favor of Appellees without the Appellees' having filed a motion requesting such relief. In *Rogers v. Lamb,* 347 Ark. 102, 60 S.W.3d 456 (2001), this court held that the circuit court erred in settling a case in favor of the plaintiff in the absence of any party's filing of a motion to dismiss or a motion for summary judgment. In that case, the plaintiff, Lamb, filed a petition for ejectment against the defendant, Rogers, who filed an answer and a counterclaim against Lamb. The circuit court held a preliminary hearing and received briefs from the parties, and it then, sua sponte, entered an order resolving the merits of the case in Lamb's favor. On appeal, Rogers argued among other things that the court erred in rendering its decision in the absence of an appropriate motion filed by either party. *Rogers,* 347 Ark. at 103, 60 S.W.3d at 457.

This court agreed, noting that the trial court's sua sponte ruling deprived the parties of any opportunity to present evidence or witness testimony in support of their positions. In addition, the court stated, "since Lamb neither filed a motion for summary judgment, a motion to dismiss, or a motion for judgment on the pleadings, there was no resulting burden on Rogers to 'meet proof with proof,' nor was there any impetus for the court to decide the case sua sponte." *Id.* at 104, 60 S.W.3d at 457. The court also noted that Lamb failed to cite any argument or authority that would support the trial court's granting summary judgment in the absence of a proper motion pursuant to Arkansas Rule of Civil Procedure 56. *Id.* Further, in the absence of evidence on the issues that were contested by the parties, the circuit court's order "was based upon speculation and conjecture" and simply assumed the existence of material facts. *Id.* at 104, 60 S.W.3d at 458. This failure to provide the non-prevailing party with an opportunity to meet proof with proof constituted reversible error. *Id.* at 105, 60 S.W.3d at 458.

Similarly, in *2200 Commercial Street Warehousing, L.L.C. v. Hastings Development Co., Inc.,* 98 Ark. App. 316, 255 S.W.3d 488 (2007), the court of appeals reversed the circuit court's sua sponte granting of summary judgment to the defendant. There, the plaintiff filed a motion for summary judgment to which the defendant responded that material questions of fact remained; the defendant did not file its own motion for summary judgment. Nonetheless, the court entered an order granting summary judgment in favor of the defendant. As in *Rogers v. Lamb, supra,* the court of appeals held that the sua sponte grant of summary judgment deprived the plaintiff of the opportunity to meet proof with proof and demonstrate that issues of material fact remained to be decided. *2200 Commercial St. Warehousing,* 98 Ark. App. at 319, 255 S.W.3d at 490. *See also Nichols v. Culotches Bay Navigation Rights Committee, L.L.C.,* 2009 Ark. App. 365, 309 S.W.3d 218 (reversible error to grant summary judgment

sue sponte in the absence of a motion for summary judgment, motion to dismiss, or motion for judgment on the pleadings).

■ In the instant case, the circuit court did what was held to be reversible error in *Rogers, 2200 Commercial St. Warehousing,* and *Nichols.* Nonetheless, Appellees contend that, because they raised Rule 12(b)(6) in the affirmative-defenses portion of their original answer, the trial court had a proper basis for dismissing Appellants' complaint. This notion, however, ignores the fact that Appellees never filed an answer to the amended complaint and thus did not re-plead this defense. Appellees also argue that their trial brief "acted" as a motion to dismiss such that no additional answer was required. They cite no authority in support of this novel proposition, however, and it is well settled that this court will not consider arguments advanced without citation to convincing authority. *See State of La. v. Joint Pipeline Grp.,* 2010 Ark. 374, 373 S.W.3d 292; *Shotzman v. Berumen,* 363 Ark. 215, 213 S.W.3d 13 (2005).

In addition, the circuit court did not grant a motion to dismiss. Because it considered matters outside of the pleadings, it converted the matter to a summary-judgment proceeding. At the January 22, 2010 hearing, the court informed the parties that they would have five days to file amended pleadings and briefs on the matters raised in the amended complaint. At the subsequent hearing, the court engaged in a discussion with the parties about the history of Eureka Springs' ordinances authorizing the mayor to install parking meters and repeatedly referred to Appellees' exhibits that had been filed along with their trial brief. The court afforded no opportunity for Appellants to submit any testimony or evidence to contradict or rebut the exhibits submitted by Appellees. Instead, it dismissed the complaint on its own motion.

Although the court stated that it felt the issues before it were "strictly matters of law," we nonetheless conclude that its actions were in error because it converted the matter to a summary-judgment proceeding without putting Appellants on notice that they would need to meet Appellees' proof with their own. *See Rogers v. Lamb,* 347 Ark. at 104, 60 S.W.3d at 457. Given notice of the court's intentions and an opportunity to rebut Appellees' proof with evidence of their own, Appellants might have been able to submit additional evidence that indicated that there remained a genuine issue of material fact. The circuit court's actions foreclosed that possibility, however, and thus constituted reversible error.[3]

Reversed and remanded.

---

**3.** Because we reverse on Appellants' first argument, it is unnecessary to address the remaining arguments raised in the appeal.