Cite as 2021 Ark. 10

# SUPREME COURT OF ARKANSAS

**No.** CV–20–50

| | |
|---|---|
| RENT-A-CENTER EAST, INC.<br>APPELLANT | **Opinion Delivered:** January 28, 2021 |
| V. | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT<br>[NO. 60CV-18-5076] |
| LARRY WALTHER, IN HIS<br>OFFICIAL CAPACITY AS DIRECTOR<br>OF THE ARKANSAS DEPARTMENT<br>OF FINANCE AND<br>ADMINISTRATION | HONORABLE MORGAN E. WELCH,<br>JUDGE |
| APPELLEE | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

This appeal concerns the assessment of short-term rental tax on certain transactions between appellant Rent-A-Center East, Inc. ("Rent-A-Center"), and its customers. The sole point on appeal is whether these rent-to-own leases are subject to the special excise tax on short-term rentals of tangible personal property levied by Arkansas Code Annotated section 26-63-301(b) (Repl. 2008). The circuit court found that such leases are subject to the tax, and on de novo review, we affirm.

## I. *Background*

Rent-A-Center operates retail stores throughout Arkansas (among other states) and markets tangible personal property such as furniture and electronics on a rent-to-own basis. Under the company's "rental-purchase agreement," customers select an initial rental term of monthly, semimonthly, or weekly. There is no obligation to renew the agreement beyond the

initial term. If a customer chooses to acquire ownership, he or she must rent the property on a weekly, semimonthly, or monthly basis as provided in the agreement. For weekly rentals, for example, the agreement provides as follows:

> If you choose to acquire ownership through weekly rental, you will make _____ payments: the initial rental payment of _____[,] weekly payments of _____[,] and a final payment of _____[,] for a total of _____ in rent and sales tax of _____[,] for a Total Cost of _____.

Rent-A-Center's agreement provides that, at the end of the initial rental term, the customer may either terminate the agreement by returning the rented property or renew the agreement for a weekly, semimonthly, or monthly renewal term by making an advance payment in an amount based on the renewal term chosen by the customer. At the end of each renewal term, the customer again may either terminate or renew the agreement. The agreement is expressly stated to be a rental transaction, and Rent-A-Center retains title to the rental property unless the customer becomes the owner by paying the predetermined number of weekly, semimonthly, or monthly payments and a specified final payment or by making a lump-sum payment as prescribed by the agreement.

Following an audit for the period January 1, 2012–December 31, 2014, the Arkansas Department of Finance and Administration (DFA) issued a "Notice of Proposed Assessment" to Rent-A-Center for $615,261.70 of short-term rental tax, $2,160.10 of compensating-use tax, and $191,726.73 of interest. Rent-A-Center protested the proposed assessment, and an administrative hearing was held. The proposed assessment was upheld in a decision issued on October 10, 2017, and Rent-A-Center requested a Director's revision of the administrative decision as allowed under Arkansas Code Annotated section 26-18-405(d)(4). By letter dated February 13, 2018, the Director sustained the administrative

2

decision. DFA classified Rent-A-Center's rental-purchase-agreement transactions as short-term leases under Arkansas Code Annotated section 26-63-102 if they had weekly or semimonthly payment periods, imposing a new short-term rental tax each time the contracts automatically renewed. On February 21, 2018, DFA issued a "Notice of Final Assessment" with a balance of $894,965.86. Rent-A-Center paid that amount and notified DFA of its intent to file suit under Arkansas Code Annotated section 26-18-406.

On July 20, 2018, Rent-A-Center filed a complaint in the Pulaski County Circuit Court pursuant to Arkansas Code Annotated section 26-18-406, seeking judicial relief from the tax assessment established by the audit determination of Larry Walther in his official capacity as Director[1] of DFA. Rent-A-Center alleged that DFA wrongly classified the rental-purchase-agreement transactions as "leases" or "rentals" under the definitions contained in Arkansas Code Annotated section 26-63-102(5). Rent-A-Center contended that its transactions fit within section 26-63-102(5)(B)(i) & (ii). Those definitions are as follows:

> (5)(A)(i) "Lease" or "rental" means any transfer of possession or control of tangible personal property for a fixed or indeterminate term for consideration.
>
> (ii) A lease or rental may include future options to purchase or extend.
>
> (B) "Lease" or "rental" does not include:
>
> (i) A transfer of possession or control of tangible personal property under a security agreement or deferred payment plan that requires the transfer of title upon completion of the required payments;
>
> (ii) A transfer of possession or control of tangible personal property under an agreement that requires the transfer of title upon completion of

---

[1]The Transformation and Efficiencies Act of 2019, Act 910 of 2019, changed this title from "Director" to "Secretary."

required payments and payment of an option price that does not exceed the greater of one hundred dollars ($100) or one percent (1%) of the total required payments[.]

Ark. Code Ann. § 26-63-102(5)(A) & (B)(i)–(ii). Further, assuming *arguendo* that the transactions were leases or rentals, Rent-A-Center argued that they were not taxable "short-term rentals" within the meaning of Arkansas Code Annotated section 26-63-102(10), which defines a "short-term rental" as "a rental or lease of tangible personal property for a period of less than thirty (30) days to a single consumer." DFA answered the complaint, and both parties filed motions for summary judgment. Attached to Rent-A-Center's motion was the affidavit of Susan Wood, Vice President - Tax. Wood averred that the typical time period for all payments to be made under a rental-purchase agreement, after which ownership transfers to the customer, is between seven and thirty months. In addition, she stated that less than 4 percent of Arkansas rent-to-own transactions in the periods from January 2012 through December 2014 were returned in thirty days or less.

## II. *Standard of Review and Rules of Construction*

In this case, both parties moved for summary judgment, agreeing that there were no material issues of fact. Therefore, we determine on review whether DFA was entitled to judgment as a matter of law. *See City of Little Rock v. Alexander Apartments, LLC*, 2020 Ark. 12, at 7, 592 S.W.3d 224, 230. We review a circuit court's decision in a tax case de novo. *Walther v. FLIS Enters., Inc.*, 2018 Ark. 64, at 5, 540 S.W.3d 264, 268. We also review issues of statutory interpretation de novo, as it is this court's responsibility to determine what a statute means. *Id*. This court has explained:

The "cardinal" rule of statutory interpretation is to give effect to the intent of the legislature. To do so, we first construe the statute just as it reads,

4

giving the words their ordinary and usually accepted meaning in the common language. We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute. When the language of the statute is plain and unambiguous, there is no need to result to the rules of statutory construction, but when the meaning is not clear, we look to "the subject matter, the object to be accomplished, the purpose to the served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject."

2018 Ark. 64, at 6, 540 S.W.3d at 268 (citations omitted). In addition, we are mindful of the standards set forth by the General Assembly for construing state tax law. Tax-imposition statutes shall be strictly construed in limitation of the imposition of the tax. Ark. Code Ann. § 26-18-313(a) (Supp. 2019). The burden of establishing the proper construction of the statute is on DFA as the party claiming application of the tax. *See* Ark. Code Ann. § 26-18-313(d). Words used in statutes imposing a tax and in statutes providing for a tax exemption, deduction, or credit shall be given their plain and ordinary meaning, not their narrowest possible meaning. Ark. Code Ann. § 26-18-313(e). Finally,

(f)(1) Statutes imposing a tax and statutes providing a tax exemption, deduction, or credit shall be fairly and reasonably construed, taking into consideration the purpose and spirit of the tax, exemption, deduction, or credit and the public policy at the time the statute was passed.

(2) If after taking this section and other applicable rules of statutory construction into account, a well-founded doubt exists with respect to the meaning of a statute imposing a tax or providing a tax exemption, deduction, or credit, the rule of strict construction shall require that the doubt be resolved against the tax, exemption, deduction, or credit.

Ark. Code Ann. § 26-18-313(f)(1), (2).

### III. *Analysis*

The sole issue on appeal pertains to the short-term rental tax and whether the transactions at issue were taxable short-term leases or nontaxable long-term leases. In

5

addition to other taxes, Arkansas imposes a special excise tax of one percent on the gross receipts received from the short-term rental of tangible personal property. Ark. Code Ann. § 26–63–301(b)(1). "Short-term rental" as used in section 26–63–301 "means a rental or lease of tangible personal property for a period of less than thirty (30) days, except rentals or leases of motor vehicles, trailers, or farm machinery and equipment." Ark. Code Ann. § 26–63–301(a)(2).[2]

Rent-A-Center argues that its transactions are not "short-term rentals" in light of Rent-A-Center's long-term commitments. It relies on the undisputed evidence that its customers almost always renew their leases beyond the initial term. According to Rent-A-Center,

> The parties really are in a long-term agreement for the customer to acquire the merchandise, but with the customer having the option to terminate the lease and relinquish possession. Indeed, DFA's own Rule ET-5(D) says that it should look to the "intended term of the rental" in determining taxability. Ark. Admin. Code 006.05.212-ET-5(D), available at www.dfa.arkansas.gov/revenue-policy-legal/df a-revenue-rules/, archived at https://perma.cc/K9VH-Q6ZC (Excise Tax, 2008-3 Gross Receipts Tax Rules, 168).

Rent-A-Center further contends that the intent of the General Assembly was to tax "true" short-term leases like bicycle rentals or hardware-store tool rentals, not rent-to-own purchases of basic household goods.

DFA counters that the initial rental period or lease term and each renewal term are separate periods for purposes of the definition of "short-term rental." A weekly or

---

[2]The definition in the general provisions of Chapter 63, Arkansas Special Excise Taxes, provides: "Short–term rental" means a rental or lease of tangible personal property for a period of less than thirty (30) days to a single consumer." Ark. Code Ann. § 26–63–102(10).

semimonthly rental is a short-term rental because it is for a period of less than thirty days. According to DFA, whether the customer renews the lease does not change the length of the rental or lease period. We agree.

Looking to the plain language of the definition of "short-term rental" as well as the language of the rental-purchase agreement, we conclude that the rentals are subject to the short-term rental tax when the term is weekly or semimonthly. Although Rent-A-Center contends that DFA's "broad reading" of the definition of "short-term rental" exceeds the intended application of the statute and impermissibly resolves doubt in favor of taxation, there is simply no ambiguity to be resolved. When a customer rents or leases tangible personal property "for a period of less than thirty (30) days," that rental or lease is subject to the short-term rental tax. Here, we apply the plain and ordinary meaning of "a period of less than thirty days," and we hold that DFA has met its burden of establishing the proper construction of the statute. Therefore, we affirm the order granting DFA's motion for summary judgment and denying Rent-A-Center's motion for summary judgment.

Affirmed.

WOOD, WOMACK, and WEBB, JJ., concur.

**RHONDA K. WOOD, Justice, concurring.** I agree with the majority's holding but write separately to highlight a discrepancy in the opinion's recitation of our law of statutory interpretation. As the majority writes, we review issues of statutory construction de novo because it is this court's responsibility to determine what a statute means. *Douglas Cos. v. Walther*, 2020 Ark. 365, 609 S.W.3d 397 (citing *Walther v. FLIS Enters., Inc.*, 2018 Ark. 64, 540 S.W.3d 264). But the majority opinion then recites the legislature's standards for construing

tax laws. *See* Ark. Code Ann. § 26-18-313. The majority includes language from the statute that exemplifies standards for statutory interpretation different from this court's precedent (compare "well-founded doubt" in § 26-18-313(f)(2) with our standard of "plain and unambiguous" as cited by the majority in *FLIS Enterprises*).

Rules of statutory interpretation are firmly planted in our common law and are not subject to manipulation by the legislature. Because the statute here is plain and unambiguous, we do not apply the rules of construction included in Ark. Code Ann. § 26-18-313. Still, I caution parties and courts against misinterpreting the majority's dicta and using this statute to the extent it conflicts with our common-law rules of statutory construction because we have not yet directly applied this portion of the statute in a case.[1]

WOMACK and WEBB, JJ., join in this opinion.

*Dover Dixon Horne PLLC*, by: *Michael G. Smith*, *Matthew C. Boch*, and *Adrienne M. Griffis*, for appellant.

*John Theis*, Office of Revenue Legal Counsel, for appellee.

---

[1]Recently, in *American Honda Motor Co., Inc. v. Walther*, 2020 Ark. 349, at 7, 610 S.W.3d 633, 637, we declined to apply this statute to the definition of "business income."

8